**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ARTHUR JASON YOUNG,  #394821,

     Petitioner,

                            Civil No: 06-CV-14754
                            Honorable Victoria A. Roberts
                            United States District Judge

v.

JOHN PRELESNIK,

     Respondent.

_____/

**OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS**
**CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

     Arthur Jason Young, ("Petitioner), confined at the Newberry Correctional Facility

in Newberry, Michigan, seeks a petition for writ of habeas corpus under 28 U.S.C. §2254

through counsel, Carole M. Stanyar.  Petitioner challenges his convictions for second

degree murder, M.C.L.A. 750.317; involuntary manslaughter, M.C.L.A. 750.321; and two

counts of possession of a firearm during the commission of a felony, M.C.L.A. 750.227b.

For the reasons that follow, the Court denies the petition.

**I. BACKGROUND**

     Petitioner was convicted by a jury in the Macomb County Circuit Court.  This

Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals,

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See*

*Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

The charges in this case arise out of the deaths of Frank Tipton and defendant's girlfriend, Misty McGinnis. Defendant fired several shots into a parked van outside of his home during the early morning hours of January 25, 2000. Mr. Tipton and Ms. McGinnis were in the van at the time and were either engaged, or about to be engaged, in sexual activity. Defendant and Ms. McGinnis had met Mr. Tipton earlier that evening when they went to purchase drugs at a home in Detroit. The prosecution argued that defendant shot Mr. Tipton as a result of a bad drug deal. Conversely, defendant claimed that Mr. Tipton had robbed him and took a ring and a necklace from Ms. McGinnis earlier in the evening. He further claimed that Mr. Tipton held them hostage for part of the evening. According to defendant, he shot Mr. Tipton in self-defense and in defense of Ms. McGinnis, whom he believed Mr. Tipton was planning to sexually assault.

*People v. Young,* No. 231707, * 1-2 (Mich. Ct. App. May 20, 2003)

Petitioner's conviction was affirmed on appeal, although the matter was remanded to the trial court to correct Petitioner's judgment of sentence to clarify that Petitioner's felony-firearm sentences were to be served concurrent to each other, but consecutive to Petitioner's convictions for murder and manslaughter. *Id.* The Michigan Supreme Court denied Petitioner leave to appeal. *People v Young*, 470 Mich. 852; 679 N.W. 2d 701 (2004).

Petitioner filed a post-conviction motion for relief from judgment pursuant M.C.R. 6.500, *et seq*. The trial court denied the motion for relief from judgment. *People v. Young,* No. 2000-2009-FC (Macomb County Circuit Court, August 26, 2005). The Michigan appellate courts denied Petitioner leave to appeal for failing "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v Young*, No. 265721 (Mich. Ct. App. May 4, 2006); *lv. den.* 477 Mich. 912; 722 N.W.2d 862 (2006).

Petitioner seeks habeas relief on the following grounds: (i) Petitioner was denied

2

his right to present a meaningful defense; (ii) Petitioner was denied the effective

assistance of appellate counsel; and, (iii) Petitioner was deprived of due process and a fair

trial because of prosecutorial misconduct.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim–

> (1)      resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the
> United States; or
> (2)      resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A

federal habeas court may not "issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 410-11.

# III. Discussion

## A. The procedurally defaulted claims.

For purposes of judicial clarity, the Court discusses the procedural default issue first. Respondent contends that a portion of Petitioner's first claim, as well as his entire third claim, are procedurally defaulted for various reasons.

Respondent first argues that the portion of Petitioner's first claim regarding the trial court's refusal to instruct the jury on the use of deadly force against a fleeing felon is procedurally defaulted because Petitioner did not raise this claim in his application for leave to appeal with the Michigan Supreme Court after the Michigan Court of Appeals had affirmed his conviction on direct review.

A habeas petitioner procedurally defaults a claim if he fails to raise it in an application for discretionary review with the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A claim raised in the state court of appeals but not in the state supreme court cannot be considered in federal habeas review. *See Harris v. Stegall,* 157 F. Supp. 2d 743, 750 (E.D. Mich. 2001).

Petitioner raised the claim involving the trial court's refusal to instruct the jury on the "fleeing felon defense " in his direct appeal to the Michigan Court of Appeals. By his own admission, Petitioner failed to raise this claim in his application for leave to appeal to the Michigan Supreme Court. By failing to seek discretionary review of this portion of his first claim in the Michigan Supreme Court, Petitioner has procedurally defaulted this claim. *Harris,* 157 F. Supp. 2d at 750.

Respondent contends that Petitioner's third claim is procedurally defaulted because Petitioner raised this claim for the first time in his post-conviction motion, and failed to show cause and prejudice for failing to raise this claim in his appeal of right, as required by M.C.R. 6.508(D)(3).

Petitioner argues that his prosecutorial misconduct claim is not defaulted because the trial court did not rely on M.C.R. 6.508(D)(3) to deny him relief, but denied him relief on the merits and/or on the mistaken belief that Petitioner had already raised this claim on his direct appeal and was barred from bringing this claim pursuant to M.C.R. 6.508(D)(2).

In *Simpson v. Jones*, 238 F. 3d 399, 407 (6th Cir. 2000), the Sixth Circuit held that a one-sentence order of the Michigan Supreme Court stating that the defendant "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)," was a reasoned decision that invoked a procedural bar. The Sixth Circuit ruled that even though the ruling was brief and did not explicitly reference M.C.R. 6.508(D)(3), the Michigan Supreme Court's statement was nevertheless "not unexplained." *Id.* at 407-408. The Sixth Circuit made a similar ruling in *Burroughs v. Makowski,* 282 F. 3d 410, 414 (6th Cir. 2002), holding that "the Michigan Court of Appeals and Michigan Supreme Court's statements that Burroughs was not entitled to relief under M.C.R. 6.508(D) presents a sufficient explanation that their rulings were based on procedural default."

However, in *Abela v. Martin*, 380 F. 3d 915 (6th Cir. 2004), a different panel of

the Sixth Circuit concluded that where the state trial court and court of appeals denied relief on the merits of the petitioner's federal claims and the Michigan Supreme Court denied relief on the basis of M.C.R. 6.508(D) in general, the claims raised in the federal habeas petition were not procedurally defaulted. The Sixth Circuit explained:

> "given that all of the lower state courts adjudicated Abela's case on the merits, it is not at all clear that the Michigan Supreme Court's summary order relies on a procedural bar, as opposed to the non-procedural reason that Abela simply failed to meet his burden of 'establishing entitlement to the relief requested.'" *Id.* at 923.

In a case decided after *Abela* which involved nearly the same facts, the Sixth Circuit concluded that the habeas petitioner's claims were procedurally defaulted where the Michigan Supreme Court had denied the petitioner's post-conviction appeal pursuant to M.C.R. 6.508(D), even though the panel in that case did not comment about the apparent conflict in Sixth Circuit precedent regarding this issue. *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir.2004)("Munson argues that the last explained state court judgment is the trial court's opinion denying his post-conviction motion for relief. In that opinion, the court relied on procedural default in rejecting only one of his claims; it denied the other claims on their merits. Contrary to Munson's assertion, however, the last explained state court judgment in this case is the Michigan Supreme Court's order denying review of Munson's claims based upon his failure to comply with Rule 6.508(D).").

As the Sixth Circuit has subsequently commented, published panel opinions are binding on all subsequent panels, and a panel of the Sixth Circuit cannot overrule the

decision of another panel. *See Zimmerman v. Cason*, 354 Fed.Appx. 228, 234 (6th Cir. 2009); *cert. den.*--- S.Ct. ----, 2010 WL 1789927 (June 14, 2010)("*Simpson* and *Burroughs* are binding on this Court, and the Michigan Supreme Court's order denying Zimmerman relief pursuant to MCR 6.508(D) constitutes an explained order invoking an independent and adequate procedural bar to Zimmerman's federal claims."); *Alexander v. Smith*, 311 Fed. Appx. 875, 883-84 (6th Cir.2009)(confirming that *Simpson* is binding precedent); *McCray v. Metrish*, 232 Fed.Appx. 469, 478-80, and n. 1 (6th Cir.2007)(petitioner's claim procedurally defaulted where Michigan Court of Appeals and Michigan Supreme Court denied appeal pursuant to M.C.R. 6.508(D), even though trial court denied post-conviction motion on the merits; the panel declined to follow *Abela* because 6th Cir. R. 206(c) states that "en banc consideration is required to overrule a published opinion of the court").

Moreover, to the extent that the trial court erroneously invoked the provisions of 6.508(D)(2) to deny Petitioner post-conviction relief, this does not preclude a finding that the third claim is procedurally defaulted pursuant to 6.508(D)(3) for several reasons. First, Petitioner expressly invoked the cause and prejudice provisions of 6.508(D)(3) when discussing his third claim in his post-conviction appeals. Petitioner acknowledges in his habeas application that his third claim was raised only for the first time in his post-conviction motion for relief from judgment. Finally, the Michigan appellate courts denied Petitioner's post-conviction appeal pursuant to 6.508(D), after having been apprised by Petitioner in his post-conviction appeals that his third claim had not been

raised on his appeal of right.

In light of the fact that Petitioner concedes that his third claim had not been raised before the Michigan appellate courts on direct review, as well as the fact that Petitioner brought up the fact before the Michigan courts in his post-conviction pleadings that this claim had not previously been raised before on direct review so as to persuade them to grant him post-conviction relief, the trial court's possibly erroneous invocation of 6.508(D)(2) to deny Petitioner's post-conviction motion would not prevent this Court from procedurally defaulting Petitioner's third claim based on Petitioner's failure to comply with the provisions of M.C.R. 6.508(D)(3). *See Hicks v. Straub,* 377 F. 3d 538, 552, n. 14 (6th Cir. 2004).

The holdings in *Simpson* and *Burroughs* are binding on this Court, and the Michigan Court of Appeals' and the Michigan Supreme Court's orders denying Petitioner relief pursuant to M.C.R. 6.508(D) constituted an explained order invoking an independent and adequate procedural bar to petitioner's third claim.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an

8

extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner argues that the default of his claim involving the court's failure to instruct on the "fleeing felon" defense should be excused by the fact that he was represented by the same attorney in his application for leave to appeal to the Michigan Supreme Court and in his subsequent post-conviction motion in the Michigan state courts.[1] Petitioner contends that his appellate counsel was ineffective for failing to include this claim in his application for leave to appeal to the Michigan Supreme Court after the claim had been raised by his first appellate counsel in his direct appeal before the Michigan Court of Appeals and compounded the issue by failing to raise a claim involving his own alleged appellate ineffectiveness in the post-conviction motion.

A criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals. *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982). "The

---

[1] Petitioner was represented by attorney Jeffrey A. Cojocar at trial and in his appeal of right before the Michigan Court of Appeals. Petitioner was subsequently represented by attorney Larry A. Smith in his application for leave to appeal to the Michigan Supreme Court on direct review and in his post-conviction motion for relief from judgment in the Michigan courts.

right to appointed counsel extends to the first appeal of right, and no further."

*Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Because there is no constitutional

right to the effective assistance of counsel on a discretionary appeal, Petitioner cannot

claim that counsel was ineffective for failing to raise this claim in his application for

leave to appeal with the Michigan Supreme Court. *Wainwright v. Torna*, 455 U.S. at

587-88; *Harris v. Stegall,* 157 F. Supp. 2d at 750.

In a criminal proceeding in which a habeas petitioner does not have a

constitutional right to counsel, "a petitioner cannot claim constitutionally ineffective

assistance of counsel in such proceedings." *See Coleman*, 501 U.S. at 752-53. Because

Petitioner had no constitutional right to the effective assistance of counsel in filing an

application for leave to appeal with the Michigan Supreme Court, appellate counsel's

failure to raise the "fleeing felon" defense claim in the application for leave to appeal

would not establish the "cause" required to overcome the procedural default of

Petitioner's claim which he raised on his direct appeal with the Michigan Court of

Appeals, but failed to raise in the Michigan Supreme Court. *See Harris v. Stegall,* 157 F.

Supp. 2d at 750; *See also Marshall v. Trippett,* 27 Fed. Appx. 257, 260 (6th Cir.

2001)(petitioner's failure to exhaust his claim could not be excused by alleged

ineffective assistance of counsel on appeal to highest state court; petitioner had no

constitutional right to assistance of counsel in the discretionary appeal). Additionally,

because there is no constitutional right to the effective assistance of counsel in state post-

conviction proceedings, an attorney's failure to raise an issue in a state post-conviction

motion cannot establish cause to excuse a procedural default. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007); *See also Abdus-Samad v. Bell,* 420 F.3d 614, 632 (6th Cir. 2005)*; Gulertekin v. Tinnelman-Cooper,* 340 F. 3d 415, 425 (6th Cir. 2003). Petitioner has failed to establish cause to excuse the default of his claim involving the trial court's failure to instruct the jurors on the "fleeing felon" defense. Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding this portion of his first claim. *Smith*, 477 U.S. at 533.

With respect to his third claim, Petitioner has failed to offer any reasons to excuse the default of this claim. Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his prosecutorial misconduct claim. *Smith*, 477 U.S. at 533.

Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his two defaulted claims as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner contends that he has "new" evidence, in the form of the excluded testimony of Tracy Height, which he claims would establish his factual and legal innocence to the crime. Petitioner points to Height's proposed testimony that Petitioner had informed her right after the shooting that Mr. Tipton, the murder victim, had held him and his girlfriend hostage, had threatened them, robbed them, and had sexually assaulted Petitioner's girlfriend. As discussed when addressing the remaining portion of Petitioner's first claim, *infra,* Height was permitted to testify that Petitioner was

11

hysterical and appeared to be in shock.  The trial court did not strike Height's testimony

that Petitioner asked her to help him with his girlfriend.  Height also testified on cross-

examination that Petitioner had informed her that Tipton had attempted to rape his

girlfriend and had taken them hostage.  Other witnesses testified that Petitioner appeared

hysterical and in shock.   Two police officers who arrived on the scene shortly after the

shooting testified that Petitioner informed them that Tipton had attempted to rape

Petitioner's girlfriend and had robbed both of them.  Because the excluded testimony is

essentially the same as the evidence and testimony that was presented at Petitioner's

trial, it does not establish Petitioner's actual innocence so as to permit review of his

defaulted claims, because it is merely cumulative evidence. *See McCoy v. Norris*, 125 F.

3d 1186, 1191 (8th Cir. 1997).  Because Petitioner has not presented any new reliable

evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the

Court declined to review Petitioner's procedurally defaulted claims on the merits. *See*

*Campbell v. Grayson,* 207 F. Supp. 2d 589, 597-98 (E.D. Mich. 2002).

       This Court agrees with Petitioner that he could not have procedurally defaulted

his ineffective assistance of appellate counsel claim, because state post-conviction

review was the first opportunity that he had to raise this claim. *See Hicks v. Straub*, 377

F. 3d at 558, n. 17; *Riley v. Jones*, 476 F. Supp. 2d 696, 707 (E.D. Mich. 2007); *Johnson*

*v. Warren,* 344 F. Supp. 2d 1081, 1089, n. 1 (E.D. Mich. 2004).  The Court addresses the

merits of Petitioner's ineffective assistance of appellate counsel claim below.  This Court

further agrees with Petitioner that the remainder of his first claim was properly exhausted

with the state courts and is not procedurally defaulted.

**B. Claim # 1. The right to present a defense claim.**

Petitioner contends in his first claim that he was deprived of the right to present a defense by the trial court's various evidentiary rulings.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he or she also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (*quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

Moreover, under the standard of review for habeas cases as enunciated in §

2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003). Additionally, "the Supreme Court has made it perfectly clear that the right to present a 'complete' defense is not an unlimited right to ride roughshod over reasonable evidentiary restrictions." *Id.* at p. 512.

Petitioner first argues that the trial court violated his right to present a defense by precluding statements that Petitioner made to Tracy Height right after the shooting, which he claims would corroborate his claim that he shot Tipton in self-defense and in defense of Ms. McGinnis. Petitioner argues that his statements to Height qualified as "excited utterances" under M.R.E. 803(2). The trial court excluded the statements on the grounds that they were "self-serving."

The Michigan Court of Appeals held that to the extent that Petitioner's statements to Height "could arguably be considered excited utterances," the Michigan Court of Appeals noted that "an abuse of discretion will not be found on close evidentiary questions." *Young,* Slip. Op. at * 2, n. 3 (*citing People v. Smith*, 456 Mich. 543, 550; 581 NW2d 654 (1998)). The Michigan Court of Appeals further noted that Ms. Height was permitted to testify about Petitioner's actions and his concern for Ms. McGinnis. *Id.*

The trial court's exclusion of Height's hearsay testimony did not deprive

14

Petitioner of a fair trial. First, as the Michigan Court of Appeals noted, extensive evidence which supported Petitioner's defense was presented through the testimony of Tracy Height and other witnesses. Height testified that she was awakened at approximately 3:00 a.m. by the sound of approximately five gunshots and a crash. (Tr. 9/22/2000, p. 115). Height went to the window and saw that a van had struck the neighbor's truck and pushed it forward and sideways in the road. (*Id.* ). Height was permitted to testify that Petitioner was "hysterical", "sobbing", "in shock", and that "[i]t was awful ... the way he was screaming it was excruciating, it was horrifying." Height testified several times that Petitioner was concerned about his girlfriend. (*Id.* at pp. 116-20). On cross-examination from the prosecutor, Height testified that Petitioner informed her that the murder victim had attempted to rape his girlfriend and had attempted to take him hostage. Although the prosecutor moved for this testimony to be stricken, there is no indication on the record that the court ever struck this testimony, as Petitioner claims. (*Id.* at pp. 121-23).

Several other witnesses, including at least two police officers, testified that Petitioner appeared "hysterical", "scared", "frantic", or in shock. They also testified that Petitioner appeared concerned about his girlfriend. (Tr. 9/20/2000, pp. 22, 77, 89, Tr. 9/22/2000, p. 89; Tr. 9/26/2000, p. 109). Petitioner informed Officer Justin Price that Tipton had tried to rape McGinnis and informed Officer Michael Saier that Tipton had robbed him. (Tr. 9/20/2000, pp. 71, 89). Petitioner testified at great length that Tipton had robbed him and McGinnis, had taken both hostage, had suggested having sex with

15

McGinnis against her will, and had driven to Petitioner's house to obtain more money, where he threatened to drive off with McGinnis and kill her if Petitioner did not return to the van in three minutes. Petitioner was able to present extensive evidence in support of his theory of self-defense and defense of others.

The exclusion of Petitioner's statements to Height, on the ground that they did not qualify as an excited utterance, did not deprive Petitioner of the right to present a defense, in light of the fact that Petitioner was able to present ample testimony, including from Height herself, that Petitioner claimed that Tipton had abducted and robbed him and McGinnis and had attempted to rape McGinnis. If Height's testimony had been admitted, it would have corroborated what Petitioner had said to her about Tipton having abducted them and having attempted to rape Ms. McGinnis, but it would not have actually proven that Tipton had, in fact, done these acts. Because Height's statement would have been largely cumulative with Petitioner's own testimony, it was not critical to the defense. *See Santifer v. Evans,* 312 Fed. Appx. 857, 858 (9th Cir. 2009); *cert. den.* 130 S. Ct. 91 (2009).

More significantly, there was extensive evidence presented which negated Petitioner's claim that he shot Tipton in self-defense and in defense of McGinnis. Testimony at trial suggested that Petitioner was angry after being tricked into purchasing fake cocaine. (Tr. 9/21/2000, pp. 42-43; Tr. 9/27/2000, pp 32-36, 79). Albert "L.P." Stone testified that he was selling drugs out of the house on Hazelridge Street in Detroit on the night of the shooting. Stone testified that when Petitioner returned to the house,

he was angry that someone had taken his chain and stated that "he was going to do something to some n----ers." (Tr. 9/27/2000, p. 33). When Petitioner was driven to his house, he went into his father's room where his father was sleeping. Petitioner admitted that he did not wake his father, although he claimed that he did not do so because his father was drunk. Petitioner also admitted that he did not call the police, because he feared it would take them too long to arrive at his home. Instead, Petitioner removed his father's loaded nine millimeter handgun from a nightstand. (Tr. 9/27/2000, pp. 102-04; Tr. 9/28/2000, p. 28). Although Petitioner claimed that he planned to take his father's handgun and confront Tipton to "try to end the threat that was at hand" (*Id*. pp. at 96, 121), Petitioner admitted that he approached the van from behind and fired five to six shots into Tipton's upper left shoulder. (*Id.* at pp. 106-08). Tipton suffered six wounds to the upper part of his back while McGinnis suffered a gunshot wound to the head. (Tr. 9/21/2000, pp. 6-10). Several witnesses testified that Petitioner made racial slurs about Tipton within minutes of the shooting. Officer Price testified that Petitioner told him, "I'm glad [I] shot him; and I'm glad I shot that monkey." Petitioner also boasted that he had "unloaded the whole clip into him. ( Tr. 9/20/2000, pp. 70-71). Officer Saier likewise testified that Petitioner stated: "I shot him. I shot him. I killed him. I'll do it again. I shot that n----er. I'd do it again." (*Id.* at p. 87). Officer Saier reiterated that Petitioner referred to Tipton as a "Black motherfucker. N----er." (*Id.* at p. 88). Milivoje Simich heard Petitioner yell after the shooting, "I killed that motherfucker". (*Id.* at p. 21). Petitioner told Officer Price that he would have shot Tipton sixteen times if he had

17

more ammunition.  Petitioner also told him that he had aimed at Tipton's head and chest. (*Id.* at pp. 71-2).  Petitioner told Price that he had not informed his father about the alleged abduction, because his father would have told him to call the police and it would have taken them five minutes to come.  Petitioner told Price that "He had to take care of his business himself." (*Id.* at p. 72).

Linda McGinnis, Misty McGinnis' mother, testified that when Petitioner explained the circumstances of the shooting to her, he did not look at her, a tendency that Ms. McGinnis claimed Petitioner had when he did not tell the truth. (Tr. 9/21/2000, pp. 83-84).  Finally, during a recess in the trial, Petitioner approached the victim's brother and told him "Your brother got what he deserved, that he knew the rules of the game". (*Id.* pp. 65-66).

All of this evidence seriously calls into question Petitioner's testimony that he shot Mr. Tipton in self-defense and in defense of Misty McGinnis.  In light of the substantial evidence in this case which negated Petitioner's self-defense and defense of others claim, the exclusion of Height's testimony did not have a substantial and injurious effect or influence on the verdict. *Santifer,* 312 Fed. Appx. at 858.  The jury heard the testimony of Petitioner and the various other witnesses and rejected Petitioner's claim that he shot Tipton in self-defense and in defense of others.  This Court does not believe that "allowing the jury to hear unreliable hearsay evidence that [Petitioner] told the same story to a third-party several minutes after the shooting might have changed its verdict." *Id.* at 859.

18

Petitioner next contends that the trial court erred in excluding evidence of Mr. Tipton's prior criminal record or propensity for violence. At trial, Petitioner wanted to offer testimony that Mr. Tipton had a reputation in the community where he lived for committing robberies and that Tipton had been charged with and had confessed to killing a person during the commission of a robbery. The prosecutor objected on the ground that the evidence amounted to inadmissible specific acts of bad conduct and the trial court agreed. (Tr. 9/27/2000, pp. 5-11).

On appeal, the Michigan Court of Appeals ruled that evidence of Mr. Tipton's prior criminal record or his propensity for violence was irrelevant to Petitioner's self-defense and defense of others claim, because Petitioner did not know Mr. Tipton prior to the shooting. The Michigan Court of Appeals further ruled that Petitioner had failed to make an offer of proof of Mr. Tipton's character, as required by M.R.E. 405(a). *Young, Slip. Op. at * 3.*

Petitioner argues that evidence of Mr. Tipton's propensity of violence was admissible, even if Petitioner had no personal knowledge of Mr. Tipton's prior acts, because this evidence would have corroborated Petitioner's claim that Mr. Tipton had robbed them.

Under Michigan law, evidence that a defendant knew of a victim's violent acts or reputation is relevant to show a state of mind consistent with self-defense, and proof of a victim's violent character, regardless of the defendant's knowledge of it, would be relevant to show that victim acted in conformity. *See Allen v. Howes*, 599 F. Supp. 2d

857, 872 (E.D. Mich. 2009)(*citing People v. Harris*, 458 Mich. 310, 314-20, 583 N.W.2d 680 (1998)).

Petitioner is not entitled to habeas relief on his claim, because there was other evidence presented at trial to support his claim that Tipton had robbed them. *Allen,* 599 F. Supp. 2d at 872-73. By Petitioner's own admission, several witnesses testified that Tipton "did not look like himself" and "looked like he was going to do something." Tipton's own aunt testified that when Tipton drank, he "gets...a little wild with the family." (Tr. 9/22/2000, p. 9). The medical examiner and police officers testified that the items that Petitioner claimed had been taken from him by Tipton were found on Tipton's body, including Petitioner's jacket, a pager, a $ 2.00 bill, a winning lottery ticket, and Ms. McGinnis' jewelry. (Tr. 9/21/2000, p. 27; Tr. 9/22/2000, pp. 136-37; Tr. 9/26/2000, pp. 83, 89). Police recovered a screwdriver from Tipton's left coat pocket, the precise location where Petitioner told police they would find a weapon. The original officer in charge of the case confirmed that the screwdriver's dimensions would be similar to those of the barrel of a firearm. (Tr. 9/22/2000, p. 99; Tr. 9/26/2000, pp. 84, 86). Several witnesses testified that Petitioner had informed them immediately after the shooting that Tipton had robbed them and had attempted to rape Ms. McGinnis. Because the evidence that was admitted gave Petitioner a sufficient foundation to establish that he shot the victim in self-defense or in defense of others, the exclusion of the additional, cumulative evidence to bolster his self-defense or defense of others claim did not deprive Petitioner of a fair trial. *See Davis v. Burt,* 100 Fed. Appx. 340, 350 (6th Cir. 2004). With

this quantum of evidence, this Court concludes that Petitioner was afforded a "meaningful opportunity" to present his self-defense and defense of others theory to the jury. Accordingly, he is not entitled to habeas relief on his claim. *Allen,* 599 F. Supp. 2d 873.

Further, after reviewing the full record, this Court concludes that the exclusion of the evidence did not have a substantial and injurious effect or influence in determining the jury's verdict. *Allen,* 599 F. Supp. 2d at 874. As mentioned when addressing Petitioner's first evidentiary claim, the prosecutor presented significant evidence to rebut Petitioner's self-defense and defense of others claim. Petitioner admitted that he approached the van from behind and fired five to six shots into Tipton's upper left shoulder. Tipton suffered six wounds to the upper part of his back while McGinnis suffered a gunshot wound to the head. In light of the excessive force used by Petitioner in this case, the exclusion of evidence that Tipton had a reputation and propensity for violence or committing robberies did not have a substantial and injurious effect or influence on the jury's verdict. *See Cortez v. Garcia,* 130 Fed. Appx. 131, 133-34 (9th Cir. 2005).

Petitioner lastly contends that the trial court erred in refusing to permit Sergeant Jerome Urbaniak to offer expert testimony on the issue of whether Petitioner shot Tipton in self-defense.

"In the realm of expert testimony, a criminal defendant is not constitutionally entitled to introduce an expert's conclusion that the criminal defendant acted in

self-defense." *Tourlakis v. Morris*, 738 F. Supp. 1128, 1135 (S.D. Ohio 1990). Because Petitioner's state of mind regarding his self-defense claim was ascertainable to the jury without the assistance of expert testimony, Petitioner has failed to show that he was deprived of a fair trial by the exclusion of this expert testimony. *See Socha v. Wilson,* 477 F. Supp. 2d 809, 813 (N.D. Ohio 2007). Petitioner is not entitled to habeas relief on his first claim.

### C. Claim # 2. The ineffective assistance of appellate counsel claim.

Petitioner lastly contends that he was deprived of the effective assistance of appellate counsel because his appellate counsel failed to cite to the trial court record, which lead to the abandonment of his claims on appeal.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must show that the state court's conclusion regarding the claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

Petitioner is not entitled to habeas relief on his claim for several reasons. First, although the Michigan Court of Appeals noted that Petitioner "failed to provide appropriate citations to the record in support of his arguments" and that it was "not for this Court to discover and rationalize the basis for defendant's claims[.]", the Michigan Court of Appeals went on to indicate that "Nevertheless, a review of the record fails to disclose that the trial court's evidentiary rulings amounted to an abuse of discretion." *Young,* Slip. Op. at * 2. In addition, the Macomb County Prosecutor's brief on appeal did provide citations to the appropriate sections of the trial court record with respect to these claims. [2] In light of the fact that the Michigan Court of Appeals reviewed the record, appellate counsel's failure to cite to the transcript pages did not prejudice Petitioner. Because appellate counsel's omission of the page transcripts from his appeal brief did not prejudice Petitioner, he is not entitled to habeas relief on his ineffective assistance of appellate counsel claim. *See Zimmerman v. Burge*, 492 F.Supp.2d 170, 196-97 (E.D.N.Y. 2007).

Petitioner is also unable to show that he was prejudiced by appellate counsel's failure to cite to the transcripts in light of the fact that these same claims were presented to the Michigan appellate courts as part of Petitioner's ineffective assistance of appellate counsel claim on Petitioner's post-conviction motion for relief from judgment and rejected by them. *See Hollin v. Sowders*, 710 F. 2d 264, 265-67 (6th Cir. 1983); *Johnson*

---

[2] See Plaintiff Appellee's Brief on Appeal, this Court's Dkt. Entries ## 10-20; 10-21.

*v. Warren,* 344 F. Supp. 2d 1081, 1096 (E.D. Mich. 2004); *Bair v. Phillips,* 106 F. Supp. 2d 934, 938, 943 (E.D. Mich. 2000). The state courts' rulings on Petitioner's motion for post-conviction relief granted Petitioner an adequate substitute for direct appellate review, therefore, his first appellate counsel's failure to cite to the trial transcript pages on Petitioner's appeal of right did not cause him any injury. *Bair,* 106 F. Supp. 2d at 943 (citing *Gardner v. Ponte*, 817 F. 2d 183, 189 (1st Cir. 1987)). There is no point in remanding this case to the state courts to reconsider a case that they have already adversely decided on more than one occasion. *Gardner*, 817 F. 2d at 189. Petitioner is therefore not entitled to habeas relief on his second claim.

## IV. Conclusion

The Court will deny the Petition for Writ of Habeas Corpus. The Court will also deny Petitioner a Certificate of Appealability. Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's

order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court denies a Certificate of Appealability because Petitioner failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable or that he should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

## V.  ORDER

The Petition for Writ of Habeas Corpus is **DENIED.**

A Certificate of Appealability is **DENIED.**

**IT IS ORDERED.**


S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  July 22, 2010

The undersigned certifies that a copy of this
document was served on the attorneys of record
by electronic means or U.S. Mail on July 22,
2010.

s/Carol A. Pinegar
Deputy Clerk